

Trenk·DiPasquale
Della Fera·Sodono

**Richard D. Trenk**
Director
Direct: 973-323-8660
rtrenk@trenklawfirm.com

347 Mt. Pleasant Avenue, Suite 300
West Orange, New Jersey 07052

P: 973-243-8600
F: 973-243-8677

February 2, 2018

Client No. 4627-0001

*Via ECF and Email (chambers_of_jnp@njb.uscourts.gov)*

Hon. Jerrold N. Poslusny, Jr., U.S.B.J.
United States Bankruptcy Court – District of New Jersey
Mitchell H. Cohen U.S. Courthouse
400 Cooper Street, 4th Floor
Camden, N.J. 08101

Re:   **In re Konstanti Katsigeorgis**
      **Bankr. D.N.J. Case No. 15-12453 (JNP), Chapter 13**
      **Reply to Opposition to Atlantic City's Motion for Retroactive Stay Relief**
      **Hearing Date: February 6, 2018 at 10:00 a.m.**

Dear Judge Poslusny:

    This firm represents the City of Atlantic City (the "City") in connection with the Chapter 13 bankruptcy case of Konstanti Katsigeorgis (the "Debtor"). We respectfully submit this letter brief in lieu of a more formal memorandum of law in reply to the *Certifications* filed on behalf of the Debtor, specifically the *Debtor's Certification* (Docket No. 54) and the *Certification of Counsel* (Docket No. 54-1), in opposition to the City's *Motion for Entry of an Order Granting Retroactive Relief From the Automatic Stay to Permit In Rem Tax Foreclosure and Sale,* and for such other and further relief as the Court deems just and equitable (the "Motion"). The City hereby also replies to the Debtor's late-filed letter brief of February 1, 2018 (Docket No. 57), yet, in so doing, the City does not concede that same should be considered by the Court, and instead the City reserves all rights and remedies to challenge any arguments raised thereby as untimely.

    As previously shown by the City in support of the Motion, the City was completely unaware of the instant bankruptcy case at any time prior to the Complaint[1] or the later Tax Sale due to the Debtor's failure to provide notice to the City, or to defend against the State Court Action. Dasti Certif. ¶¶ 12-15, Timbers Certif. ¶¶ 3, 6-7. As to the supposed May 20, 2016 letter from opposing counsel, it was shown that same was inconsistent on its face and in view of

---

[1] Any capitalized terms not defined herein shall have the meanings ascribed to such terms by the City's *Memorandum of Law* in support of the Motion.

Hon. Jerrold N. Poslusny, Jr., U.S.B.J.
February 2, 2018
Page 2

resulting conduct because, despite 18 months passing between May 20, 2016 and December 12, 2017, the Debtor did nothing.

In opposing the Motion, the Debtor actually verifies the City's allegations, while further establishing the bad faith that occurred in this bankruptcy case through the knowing omission of the City as a creditor. As to the Debtor's late-filed arguments, the Debtor's attempts to assert equity in the Property conflict with value asserted through the Debtor's Amended Schedule D, which was filed only three days ago. Furthermore, if the value of the Property is what the Debtor alleges, then the Court must find that he previously misrepresented its value through his prior Schedule D, which would establish another act of bad faith that would vitiate his ability to seek protection under the Bankruptcy Code, or section 362, by virtue of the Supreme Court's decision in Marrama v. Citizens Bank of Massachusetts (as detailed below). Alternatively, if the Motion were denied, and the Debtor allowed to proceed with modifications to his Plan (defined below), the Debtor would have to contribute an additional $269,700.00 into the Plan. As a separate matter, to satisfy the taxes owed to the City, the Debtor would have to make monthly payments of at least $7,461.87 over the remaining life of the Plan on the basis of the City's claim, standing alone, thereby rendering the Plan entirely unfeasible. Each of these arguments are more fully explained below.

The Certifications submitted by the Debtor in opposition confirm the City's contentions in this matter.[2] First, the Debtor has admitted withholding information about taxes owed to the City from the bankruptcy process. See Docket No. 54 ¶ 2 ("I did not get any of the paperwork to my lawyer until well after the time the Bankruptcy was filed."); see also Docket No. 54-2 ¶ 5 ("I did not tell my attorney that I owed taxes when I filed this case."). The Debtor is vague as to when he actually did reveal the information regarding tax debts owed to the City to his counsel, but what is indisputable as a matter of record is that the Debtor only recently amended his bankruptcy schedules to reflect the City, and did so as an act in response to the Motion. See Docket Nos. 53 to 53-3. Debtor's counsel, for his part, admits that he should have sooner amended the Debtor's schedules to notify the City. See Docket No. 54-1 ¶¶ 5, 8. In fact, these are acts of bad faith in connection with the bankruptcy process.

The only timely-made argument by the Debtor in opposition to the Motion rests on the theory that the City should have done a title search of the Property prior to filing the Complaint. The City, however, did obtain a comprehensive title search prior to instituting the State Court Action. See *Supplemental Certification of Jerry J. Dasti, Esq., In Further Support of the Motion* (the "Supplemental Dasti Certif.") ¶¶ 3-4. Specifically, the City retained Jersey National Title, Inc., to conduct a comprehensive title search and report of the Property, which was memorialized in a title report on or about November 11, 2015. Id. Critically, the title report did not show any

---

[2] In addition to verifying the City's arguments, the Debtor's response to the Motion also raises new issues and concerns, specifically that the Debtor is apparently residing at the Property, which, upon information and belief, is not zoned to be a residential dwelling. The City reserves all rights and remedies in connection therewith.

Hon. Jerrold N. Poslusny, Jr., U.S.B.J.
February 2, 2018
Page 3

record of a bankruptcy between the period from November 2, 1995 through November 2, 2015. Id. ¶ 4. Also, the City notes, in response to conjecture raised in response to the Motion, that a certification regarding a title search was and is not a requirement of a tax foreclosure complaint. Id. ¶ 5.

In attempting to overcome these facts and circumstances, through his late-filed letter brief the Debtor now seeks to advance an argument that he has equity in the Property for purposes of Bankruptcy Code section 362. Docket No. 57. This argument fails because although the late-filed letter brief alleges that the Property "is currently assessed at $429,700," Docket No. 57, for purposes of the bankruptcy case the Debtor's Amended Schedule D – which was filed only three days ago, and asserted a value of $160,000.00 – must control. See Docket No. 53. As to the amount of the City's tax debt, through January 31, 2018 the amount of the City's tax claim totals $186,546.68. See *Certification of Kacey Johnson, Tax Collector for the City, In Support of the Motion* (the "Johnson Certif.") ¶ 3. Accordingly, the Debtor lacks equity in the Property.[3]

In addition, and ironically, the Debtor's late-filed letter brief also alleges the absence of bad faith, which is initially preposterous given the Debtor's flagrant failure to notify the City of his bankruptcy case, and is made worse given that the Debtor's newfound assertion of the Property's value, if accepted by the Court, would actually establish bad faith through the misrepresentation of the value of the Property. In Marrama v. Citizens Bank of Massachusetts, wherein the debtor had misrepresented the value of a real property, the Supreme Court held that through bad faith or fraud, including the misrepresentation of the value of assets, a debtor could be deemed to have forfeited rights under the Bankruptcy Code. 549 U.S. 365, 375 (2007). Notably, the Supreme Court observed the Bankruptcy Court's reasoning "that there is no 'Oops' defense to the concealment of assets and that the facts established a 'bad faith' case." Id. at 369-70; see also The Coastal Bank of Georgia v. Archibald (In re Archibald), 314 B.R. 876, 880 (Bankr. S.D.Ga. 2004) (Holding that debtors' actions in this case constituted bad faith and an abuse of the bankruptcy process, in part because "Debtors grossly misrepresented the value of their assets in their schedules.").

Therefore, the Debtor legally cannot both assert that the he has equity in the Property, while also avoiding an implication of bad faith. Either the Debtor does not have sufficient equity in the Property, or he committed bad faith in misrepresenting the value of the Property (in addition to the bad faith already referenced above in connection with notice issues).

---

[3] The Debtor would also have lacked equity even if the City's claim were for the amount set forth by the Debtor's Amended Schedule D, $141,764.00, given that costs of sale would have to be taken account of. See, e.g., Commerce Ltd. P'ship. v. Dyevoich (In re Dyevoich), 2012 WL 194677, at *4 (Bankr. D.N.J. Jan. 23, 2012) ("Using the $1,062,000 figure as an approximation of the realistic market value of the North Carolina property, between the 10% cost of sale and the $960,000 in liens against the property, the Bankruptcy Court correctly found that no equity would result to the estate.").

Hon. Jerrold N. Poslusny, Jr., U.S.B.J.
February 2, 2018
Page 4

Alternatively, the facts underlying the Motion, and in fact the Debtor's response thereto, would require fundamental alterations to the *Chapter 13 Plan* previously filed by the Debtor (the "Plan," Docket No. 29), which was confirmed by Order entered on August 20, 2015 (Docket No. 34). More specifically, if the Debtor were allowed to proceed with argument that the Property is worth $429,700, then he would subsequently have to infuse an additional $269,700.00 into the Plan, which would represent additional equity given that the schedules underlying the Plan listed the Property as having a value of $160,000. Docket No. 19 at 3.

Furthermore, if the Debtor were permitted to attempt modifications to address the City's secured tax debt, significant additional payments would be required that would render the Plan unfeasible. Specifically, the City notes that the Plan was approved August 20, 2015, and that at such time the Debtor was required to contribute $2,313.00 monthly for a period of 54 months. See Docket No. 34. Presently, in February 2018, the City approximates that 29 months have passed since the approval of the Plan, and thus, in turn, approximately 25 months remain. To pay off the City's debt over such time, presently totaling $186,546.68, monthly payments under the Plan would have to be increased by at least $7,461.87 on the basis of the City's claim standing alone, for a monthly payment of at least $9,774.87 (putting aside additional equity to be infused in the Plan). While the Debtor states that he believes he "can afford a much higher trustee payment in order to pay off these taxes[,]" see Docket No. 54-2, there is no authority for allowing a Plan to continue when payments have to increase by such a factor.

Finally, the City notes that the Debtor's second *Certification* purports to be in support of a so-called *Motion to Extend Time to Object to Discharge and/or Dischargeability of a Debt* (see Docket No. 54-2), however as a threshold matter the City asserts that no genuine motion is articulated, nor are any cognizable facts or law advanced in support thereof. In addition, the supposed motion does not comply with procedural rules, specifically Rule 9013-1 of the Local Rules of Bankruptcy Procedure. See D.N.J. LBR 9013-1 (requiring, *inter alia*, a notice of motion, memorandum of law or statement why a memorandum of law is unnecessary, and proposed order).

For these reasons, the Court should grant the Motion.

Thank you for the Court's consideration of this matter.

                                                      Respectfully submitted,

                                                      /s/ *Richard D. Trenk*

                                                      Richard D. Trenk

cc:      Steven A. Silnutzer, Esq. (via ECF and email (stevenasil2000@yahoo.com))
         Office of the US Trustee (via ECF)